<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| CHANEL, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 05-5270 (RBK) |
| | : | |
| | : | |
| ALINA GORDASHEVSKY, et als., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**O P I N I O N**

**Kugler**, United States District Judge:

        This matter comes before the Court upon motion by Plaintiff Chanel, Inc. ("Chanel") for

an entry of default judgment against (1) Alina Gordashevsky ("Gordashevsky"), (2) Ouri Galili,

(3) Sara Galili, and (4) Cell Seek Corporation (collectively "Defendants"), pursuant to Rule

55(b)(2) of the Federal Rules of Civil Procedure for failure to appear, answer, or otherwise

defend in this matter.  Chanel further seeks injunctive relief pursuant to 15 U.S.C. § 1116 and

statutory damages pursuant to 15 U.S.C. § 1117(c) for trademark infringement and counterfeiting

against Defendants.  For the reasons set forth below, the Court will grant Chanel's motion.

I.    **Background**

Chanel is a corporate entity duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.  (Pl. Compl. at 3). Chanel is engaged in the business of manufacturing and distributing throughout the world various goods including handbags, wallets, travel bags, luggage, change purses, sunglasses, scarves, necklaces and numerous other products under the federally registered trademarks "Chanel" and "CC Monogram" (collectively "Chanel Marks").  Id.  Chanel expends substantial time, money, and other resources developing, advertising, and otherwise promoting the Chanel Marks in the United States in association with the sale of handbags, wallets, jewelry, sunglasses and other goods.  Id. at 8.  Chanel contends that as a result of these efforts, consumers readily identify merchandise bearing Chanel Marks as being high quality merchandise sponsored and approved by Plaintiff.  Id.  Accordingly, Chanel asserts that its marks achieved secondary meaning.  Id.

Commencing at least as early as 1955, Chanel registered its trademarks in the United States Patent and Trademark Office.  At present, Chanel's U.S. trademark registrations include, inter alia: CC MONOGRAM (Reg. No. 1,734,822), CC MONOGRAM (Reg. No. 1,314,511), CC MONOGRAM (Reg. No. 2,880,780), CHANEL (Reg. No. 0,626,035), CHANEL (Reg. No. 1,347,677), CHANEL (Reg. No. 1,733,051), CC CHANEL (Reg. No. 1,329,750), CHANEL (Reg. No. 1,214,265), CHANEL (Reg. No. 906,262), CHANEL IDENTIFICATION CC (Reg. No. 2,579,752), CC MONOGRAM (Reg. No. 1,654,252), CHANEL (Reg. No. 1,510,757), CHANEL (Reg. No. 0,612,169), CHANEL (Reg. No. 0,902,190), and CC MONOGRAM (Reg. No. 1,501,898). Id. at 7.

The above trademarks are registered in International Classes 9, 14, 18 and 25 and are

2

used in connection with the manufacture and distribution of many products, including but not limited to handbags, wallets, sunglasses, jewelry and scarves.  Id.  Chanel's trademarks were never assigned or licensed to any of the defendants in this matter.  Id.

According to Chanel, Gordashevsky is an individual who conducts business within this Judicial District and resides in Voorhees, New Jersey 08043. Id. at 3.  Gordashevsky uses the names Alina Gordashevsky, Italiamoda.com, Chick-Chick-Store.com, ElectroFashion.net, BidReplica.com, and AccessorizenMore.com as aliases to operate her business.  Ouri Galili, Sara Galili, and Cell Seek Corporation conduct business in Brooklyn, New York and operate under various aliases on the World Wide Web.  According to Chanel, Defendants directly and personally engaged in the sale of products bearing counterfeit versions of its registered trademarks.   Chanel further asserts that at all times relevant to this matter, Defendants had knowledge of Chanel's ownership of the above listed trademarks, including its exclusive right to use and license the trademarks and the goodwill associated with the Chanel name.  Id. at 8.

Chanel alleges that Defendants manufactured, promoted, and otherwise advertised, distributed, sold, and/or offered for sale counterfeit products, including handbags, wallets, sunglasses, jewelry and scarves bearing trademarks that were exact copies of the Chanel Marks (the "counterfeit goods").  Id.  Chanel specifically alleges that Defendants used the Chanel Marks in the same stylized fashion for a different quality of goods.  Id.

Chanel claims that the counterfeit goods are of a quality substantially different from Plaintiff's genuine goods, and that Defendants are actively distributing and advertising substantial quantities of the counterfeit goods with knowledge that purchasers will mistake such goods for the high quality products offered for sale by Chanel. Id. at 9.  Specifically, Defendants

allegedly import and/or manufacture the counterfeit goods for sale to consumers using the Chanel Marks and Trade Dress. Id. Chanel claims that Defendants misappropriated its advertising ideas and business styles with respect to Chanel's genuine products. Id.  Chanel argues that Defendants' actions confused consumers as to the origin of Defendants' counterfeit goods. Id.

Chanel contends that Defendants engaged in the above described illegal counterfeiting activities knowingly and intentionally or with reckless disregard or willful blindness to Chanel's rights for the purpose of trading on the goodwill and reputation associated with the Chanel name. Id. at 10. Accordingly, Chanel asserts that if the Court does not preliminarily and permanently enjoin Defendants' counterfeiting activities, the injury to Chanel and consumers will continue. Id. Chanel further claims that Defendants' wrongful importation, advertisement, promotion, and sale of its counterfeit goods caused Chanel's injuries and damages. Id.

On November 4, 2005, Chanel initiated this action against Defendants by filing a Complaint for Federal Trademark Counterfeiting and Infringement, Federal False Designation of Origin, and Common Law Unfair Competition. Plaintiffs served Defendants with the Summons and Complaint on November 17, 2005. Id.  Accordingly, Defendants were required to answer the Complaint by December 7, 2005.   Defendants failed to answer the Complaint or request an extension of time. Further, Defendants failed to appear in the instant action and failed to produce any records or other evidence on its behalf. Id.  On January 17, 2006, the Court entered Default against Alina Gordashevsky, Sara and Ouri Galili and Cell Seek Corporation for failure to appear, plead, or otherwise defend. Id.  Chanel requests that the Court grant final default judgement against Defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure.

## II.     Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit emphasized that such "discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at 1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, et als., 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at 1 (citing Wright, et als., § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)).

## III.    Discussion

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over claims that relate to trademark counterfeiting, infringement and false designation of origin pursuant to 15 U.S.C. §

5

§ 1114, 1116, 1121 and 1125(a).  Furthermore, this Court has diversity jurisdiction pursuant to

28 U.S.C. § 1332 since this action involves diversity of citizenship and an amount in dispute that

exceeds $75,000.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391 since Defendants'

principal place of business is within this District and the alleged wrongful activities that gave rise

to this case occurred in this District.

**A. Trademark Infringement, Counterfeiting, and False Designation of Origin**

Federal trademark infringement, 15 U.S.C. § 1114(1)(a)[1], and a false designation of origin

claim, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards pursuant to the Lanham

Act. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).

To establish either Lanham Act claim, the record must demonstrate that plaintiff (1) has a valid

and legally protectable mark; (2) owns the mark; and (3) the defendant's use of the mark to

identify goods or services causes a likelihood of confusion. Id.  The first two requirements are

satisfied when a federally registered mark has become incontestable.[2]

---

[1]      Section 1114 provides, in relevant part:
Any person who shall, without the consent of the registrant (a) use in commerce any
reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection
with the sale, offering for sale, distribution, or advertising of any goods or services on or
in connection with which such use is likely to cause confusion, or to cause mistake, or to
deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and
apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints,
packages, wrappers, receptacles or advertisements intended to be used in commerce upon
or in connection with the sale, offering for sale, distribution, or advertising of goods or
services on or in connection with which such use is likely to cause confusion, or to cause
mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies
hereinafter provided.
15 U.S.C. § 1114(1)(a),(b).

[2]      "A trademark becomes incontestable after the owner files affidavits stating that
the mark has been registered, that it has been in continuous use for five consecutive years, and
that there is no pending proceeding and there has been no adverse decision concerning the

6

To establish federal trademark counterfeiting, the record must establish that (1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit[3] or was willfully blind to such use. Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc., No. CV. 96-6961, 1998 WL 767440, 7 (E.D. Pa. Nov. 3, 1998). The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit. Id. at 2; see also 15 U.S.C. § 1117.

### B. Cause of Action and Emcasco Factors

Before awarding a default judgement, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. Croce, 332 F. Supp. 2d at 717. In the present matter, Chanel established that it had valid and legally protectable marks and that it owned such marks. Chanel alleges that Defendants manufactured, distributed, imported, advertised, sold and/or offered for sale handbags, wallets, sunglasses, bracelets, earrings, necklaces jewelry and other goods bearing counterfeits of the Chanel Marks. Further, Chanel

---

registrant's ownership or right to registration." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466 (3d Cir. 1994).

[3] According to the Lanham Act, the term "counterfeit mark" refers to "a mark that is registered on the Principal Register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). More generally, counterfeiting has been defined as "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." Playboy, 1998 WL 767440, at 7.

7

claims that its marks achieved secondary meaning as an identifier of high quality products and that Defendants actively sold, manufactured and promoted substantial quantities of counterfeit goods with knowledge that consumers would mistake such goods for the genuine high quality products offered for sale by Chanel. Id.

Accepting these allegations as true, the Court finds that Defendants infringed and counterfeited Chanel's registered trademarks in violation of § 32 of the Lanham Act by intentionally and unlawfully using such marks in a manner that was "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C.§ 1114. Therefore, Chanel's complaint sets forth claims upon which relief may be granted.

Prior to entering default judgement, however, the Court must also consider three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

Although these factors are generally more pertinent where the defendant appears to contest the entry of default, the factors weigh in Chanel's favor in this instance. Since Defendants failed to file any responsive pleadings or otherwise show cause why default should not be granted, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct." Id. Further, Defendants' failure to appear deprived Chanel of any other means of vindicating its claim and Chanel will be prejudiced if default is not granted, particularly considering the large quantities of Chanel's products at issue in this case. Accordingly, Chanel is entitled to default judgement.

### C. Calculation of Damages

The Court has wide discretion to set an amount of statutory damages. <u>Louis Vuitton Malletier & Oakley Inc. v. Veit</u>, 211 F. Supp. 2d 567, 583 (E.D. Pa 2002) ("In the absence of clear guidelines for setting a statutory damage award, courts tend to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants . . . ."). The statutory damages provision of the Lanham Act provides that in a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, a plaintiff may elect an award of statutory damages at any time before final judgement is rendered in the sum of not less than $500.00 nor more than $100,000.00 per counterfeit mark per type of goods or services. 15 U.S.C. § 1117(c).

In addition, if the Court finds that a defendant's counterfeiting actions were willful, then it may impose damages above the maximum limit up to $1,000,000 per infringement. 15 U.S.C. § 1117(c)(2). Willfulness may be inferred if a defendant continued infringing behavior after receiving notice. <u>Video Views, Inc. v. Studio 21 Ltd.</u>, 925 F.2d 1010, 1021 (7th Cir. 1991), abrogated on other grounds by <u>Budget Cinema Inc. v. Waterhouse Assoc.</u>, 81 F.3d 729 (7th Cir. 1996).

i. *Statutory Damages Against Defendant Gordashevsky*

In the present case, Chanel alleges that Defendant Gordashevsky ("Gordashevsky") acted willfully and had knowledge of Chanel's ownership of the marks at issue, including its exclusive rights to use and license the marks and the goodwill associated with the marks. Specifically, Chanel claims that Gordashevsky sold or offered for sale counterfeit Chanel products on four separate websites on the Internet. Counterfeit replications of well known and commercially

9

popular goods are profitable if consumers believe that the products originated from the recognized company, in this case Chanel.  It is highly unlikely that Gordashevsky sold and distributed copies of Chanel's products without knowledge that Chanel's rights were being infringed.[4]  Furthermore, Gordashevsky's failure to respond to this litigation in any manner amounts to "conscious snubbing and blatant disregard of both the legal system and the rights of the Plaintiffs."  Louis Vuitton, 211 F. Supp. 2d at 583.  The Court finds Gordashevsky's conduct willful.

Having concluded that Gordashevsky's conduct was willful for purposes of awarding statutory damages, the Court must determine the appropriate damages.  The purpose of § 1117 of the Act is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters.  See S. Rep. No. 177 (1995). In amending § 1117 to provide for statutory damages, Congress reasoned that "a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter hid or destroyed information about his counterfeiting." Id. This point is particularly relevant in this instance, where Gordashevsky's failure to respond to Chanel's Complaint prohibited Chanel from obtaining documents and other materials that could enable Chanel to calculate actual damages.

---

[4]     Chanel notes that its trademarks are renowned worldwide as identifiers of high quality merchandise.  The fact that Defendant sold goods using marks that were identical to such strong and established marks conclusively demonstrates their desire and purpose to trade upon Chanel's goodwill. Microsoft Corp. v. CMOS Tech., 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which defendants, acting in direct competition with the plaintiff, sold counterfeit products on which the plaintiff's registered marks appear in their entirety.").

Chanel submitted evidence[5] that established that Gordashevsky distributed, advertised, offered for sale, and/or sold at least two different forms of Chanel goods, specifically, handbags and scarves in multiple styles, bearing counterfeits of ten of Chanel's federally registered marks for the same types of goods.  Without evidence provided by Gordashevsky to the contrary, Chanel submitted that Gordashevsky could have earned as much as $1,289.00 per day in revenues through the sale of counterfeit Chanel handbags on the website Italamoda.com.[6] Further, Chanel asserts that assuming Gordashevsky turned its inventory every week and incurred an estimated profit of sixty-percent, from December 27, 2002, the date that the domain name Italamodo.com was registered, until July 23, 2003, the date Chanel's investigator determined that the website no longer functioned, Gordashevsky could have earned at least $9,280.80 in profits.

In addition to the Italamodo.com website, Gordashevsky operated the website Chick-Chick-Store.com that also distributed counterfeit Chanel handbags.  Chanel submitted that this website could have earned as much as $1,395.00 in revenues through the sales of counterfeit Chanel handbags on a given day.[7]  Chanel asserted that assuming Gordashevsky turned its inventory every week at an estimated profit of sixty-percent, from May 21, 2004, the date that the

---

[5]     This evidence included printouts of the Gordachevsky-controlled websites that illustrated the products at issue in this case.

[6]     Chanel calculated this figure by assuming that Gordashevsky sold the entire inventory of two differently styled handbags offered for sale on Italamoda.com on February 7, 2003. Chanel noted that other items that resembled Chanel's products were offered for sale on the website, but Chanel's investigator did not have the opportunity to analyze them for purposes of calculating damages.

[7]     Chanel calculated this figure assuming that Gordashevsky sold the entire inventory of five differently styled handbags offered for sale on the Chick-Chick-Store.com website on July 12, 2004.

domain name Chick-Chick-Store.com was registered, until November 4, 2005, the date that Chanel's Complaint was filed in this case, Gordashevsky could have earned at least $64,449.00 in profits.

Gordashevsky also operated the website ElectroFashion.net that distributed, inter alia, counterfeit Chanel handbags. Chanel submitted that this website could have earned as much as $955.00 in revenues through the sales of counterfeit Chanel handbags on a given day.[8]  Under the above formula, estimating a profit of sixty percent on Gordashevsky's inventory, Gordashevsky could have earned at least $28,796.00 from November 1, 2004, the date that the domain name ElectroFashion.com was registered until the date that this action commenced.

Finally, Gordashevsky also operated the website BidReplica.com.  Chanel submitted that this website could have earned as much as $150.00 in revenues through the sales of counterfeit Chanel handbags on a given day.[9]  Under the above formula, estimating a profit of sixty percent on Gordashevsky's inventory, Gordashevsky could have earned at least $1,620.00 from July 5, 2005, the date Chanel's investigator printed a sample of Gordashevsky's handbags offered for sale on BidReplicas.com until the date that this action commenced.

If the Court awarded actual damages pursuant to 15 U.S.C. § 1117(a), Gordashevsky's profits would be the appropriate measure.  Further, any such award is subject to mandatory trebling pursuant to § 1117(b) since Gordashevsky's conduct was intentional. After combining

---

[8]     Chanel calculated this figure assuming that Gordashevsky sold the entire inventory of four differently styled handbags offered for sale on ElectroFashion.net on May 6, 2005.

[9]     Chanel calculated this figure assuming that Gordashevsky sold the entire inventory of one handbag offered for sale on BidReplica.com on July 6, 2005.

the above figures calculated from estimated profits arising from the multiple websites operated by Gordashevsky, Chanel alleges that actual damages are approximately $316,620.00. Accordingly, Chanel submits that an equivalent amount constitutes a reasonable statutory damage award pursuant to §1117(c).

The Court agrees that the statutory damages submitted by Chanel are reasonable in this case and serve the dual objectives of compensating Chanel and deterring Gordashevsky and similar defendants.  This case represents the "new era" of counterfeiting. Louis Vuitton, 211 F. Supp. 2d at 584.  Cases of this nature are no longer limited to street vendors, as counterfeiters can now use the internet to expand their market.[10]  In similar cases involving multiple marks, courts either awarded the maximum damages without multiplication per mark, or lowered the per mark award. Id.  Chanel's request is reasonable in light of the large number of items offered for sale by Gordashevsky and the expansive market that it pursued through the Internet.  Further, Chanel's request is well below the statutory maximum of $1,000,000.00.  Finally, it is reasonable to infer that Gordashevsky's business was successful due to the multiple sites under its control, the fact that the sites were in operation for several years, and the number of items offered for sale.  The Court concludes that Chanel's request is reasonable, particularly due to Gordashevsky's failure to submit any evidence contrary to Chanel's calculations and estimates.

*ii. Attorney and Investigative Fees Against Gordashevsky*

Under the Lanham Act, a prevailing plaintiff is entitled to recover reasonable attorney's fees incurred pursuant to 15 U.S.C. § 1117(b).  Attorney's fees must be awarded upon a finding

---

[10]   An estimated 143 million Americans currently use the internet and represent the counterfeiter's potential consumer base.  Louis Vuitton, 211 F. Supp. 2d at 584.

13

of intent and knowledge.  Fendi S.a.S Di Paola v. Cosmetic World, 1 U.S.P.Q. 2d 1508, 1511

(S.D.N.Y. 1986).  Only if the Court finds extenuating circumstances can the Court limit such

recovery.  Louis Vuitton S.A. v. Pun Yan Lee, 875 F.2d 584, 588 (7th Cir. 1989).  Extenuating

circumstances is an affirmative defense that must be pled.  Id. at 590.

Chanel submitted that its counsel spent approximately ten hours of time in this case for

the allegations pertaining specifically to Gordashevsky.  As set forth in the Declarations of

Stephen M. Gaffigan ("Gaffigan"), these hours were reasonable in light of the secretive nature of

Gordashevsky's counterfeiting operation and Gordashevsky's lack of cooperation in this matter.

Chanel's counsel charged the rates of $275.00 and $350.00 per hour for their services, totaling

$3,792.50.  These figures are reasonable and fair.  Further, as alleged by Chanel and admitted by

Gordashevsky's default, Gordashevsky knowingly infringed Chanel's trademarks.  Chanel is

therefore entitled to recover attorney's fees pursuant to 15 U.S.C. § 1117(b) for prosecuting this

action.

Investigative charges are also recoverable under the Lanham Act.  Louis Vuitton S.A. v.

Downtown Luggage Ctr., 706 F. Supp. 839, 842 (S.D. Fla 1988); see also the Joint Statement on

Trademark Counterfeiting Legislation, expressly providing that "to the extent that an investigator

acts under the direction of an attorney, however, his or her fees may be recovered by a prevailing

plaintiff as part of an award of attorney's fees." 130 CONG. REC. H12083 (1984).  Here, Chanel

incurred investigation charges in the amount of $4,197.75 that Chanel alleges were necessary to

uncover the information regarding Defendant's counterfeiting activities.  Chanel is entitled to

recover these investigative costs.

*iii. Attorney and Investigative Fees Against Ouri Galili, Sara Galili and Cell Seek*

*Corporation (the "Cell Seek Defendants")*

Chanel submits that its counsel spent approximately ten hours in this case.  Pursuant to

Chanel's counsel's rates of $275.00 and $350.00 per hour for its services, Chanel incurred a total

of $3,792.50 in attorney's fees for pursuing its claims against the Cell Seek Defendants.  These

figures are reasonable and fair.  Chanel is therefore entitled to recover these fees pursuant to 15

U.S.C. § 1117(b).

In addition to attorney's fees, Chanel incurred investigative charges in the amount of

$2,164.95 that Chanel claims were necessary to uncover information regarding Cell Seek's

infringement.  Chanel is entitled to recover these investigative fees.

*iv. Costs*

Chanel also requests that the Court award costs in the total amount of $514.85 against

Gordashevsky and the Cell Seek Defendants.[11]  Chanel is entitled to recover these costs pursuant

to 15 U.S.C. § 1117(a).

**D.  Injunction**

The Court has the authority to grant injunctive and other equitable relief to prevent

---

[11]      These costs consist of the following:
    a) Filing Fee: $250.00
    b) Process Server Fee for Gordashevsky: $54.95
    c) Process Server Fee for Sara and Ouri Galili: $109.95
    d) Process Server Fee for Cell Seek Corp.: $99.95
The filing fee will be divided among the three defendants, Gordashevsky paying $83.34, Sarah
and Ouri Galili paying $83.33, and Cell Seek Corp paying $83.33.  Accordingly, Gordashevsky
will pay total costs in the amount of $138.29 ($83.34 plus the $54.95 process server fee); Sara
Galili, Ouri Galili and Cell Seek Corp will collectively pay total costs in the amount of $376.56
($166.66 in combined filing fees and $209.90 in combined process server fees).

further violations of a plaintiff's trademark rights. 15 U.S.C. § 1116.  Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the Plaintiff succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief. TKR Cable Co. v. Cable City Corp., No. 96-CV-2877, 1998 WL 34028782, at *5 (D.N.J. Jan. 27, 1998) (citing Roe v. Operation Rescue, 919 F.2d 857, 868 n.8 (3d Cir. 1990)). The first factor contains three sub-parts which require the plaintiff to show (1) plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist. Id. at 5.

Where Congress provided for injunctive relief in a statute such as § 1116, however, courts often forego weighing the traditional equitable considerations. See Burlington N.R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1074-75 (9th Cir. 1991); TKR Cable Co. v. Cable City Corp., 1996 WL 465508, at *10 (D.N.J. Jul. 29, 1996), vacated in part on other grounds, 267 F.3d 196 (3d Cir. 2001); Time Warner Cable of New York City v. Freedom Elec., 897 F. Supp. 1454, 1460 (S.D. Fla. 1995); Sec. Ind. Ass'n v. Bd. of Governors of Fed. Reserve Sys., 628 F. Supp. 1438 (D.D.C. 1986).

In any event, consideration of the equitable principles in this instance weighs in favor of granting Chanel the requested injunctive relief.  The difficulty in detecting and measuring the extent of Defendants' violations and potential future violations suggests that an injunction is necessary to ensure an effective remedy in this case. See id.  Moreover, the threatened injury is clearly established and legitimate, since Defendants' counterfeiting operation already damaged Chanel by confusing consumers and trading on Chanel's goodwill without its authorization. Because Defendants failed to appear in this matter, Defendants raised no equitable defenses and

there is no indication that any such defenses exist. Accordingly, this Court's exercise of equity jurisdiction is proper and the first factor weighs in favor of granting the final injunction.

Second, as noted above, the unchallenged facts of this case demonstrate that Defendants violated the Lanham Act by manufacturing, distributing, importing, advertising, selling or offering for sale various goods bearing counterfeits of the Chanel Marks. Chanel established a valid cause of action against Defendants sufficient to warrant entry of a default judgment. Therefore, Chanel succeeded on the merits.

Finally, the balance of equities weighs in favor of granting injunctive relief. Defendants' alleged misconduct clearly violates the Lanham Act. It seems the only purpose behind Defendants' counterfeiting activities was to profit from the well-established reputation of Chanel's products as being of high quality without providing the high quality product itself. Therefore, because the Defendants' illegal conduct does not serve a legitimate purpose and harms both Chanel and the public interest, the balance of equities weighs strongly in favor of granting injunctive relief.

Because § 1116 and the relevant equitable considerations authorize an award of injunctive relief under these circumstances, the Court will grant Chanel's request to enjoin Defendants from committing or assisting in the commission of any violation of the Lanham Act.[12]

---

[12]To date, Plaintiff has not submitted a proposed order as required by Local Rule 7.1(e). Accordingly, Plaintiff shall submit a proposed order within ten days of this opinion concerning the injunctive relief sought.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will enter default judgment against Defendants.  The Court will award Chanel $316,620.00 in statutory damages, attorney's fees in the amount of $3,792.50,  investigative fees in the amount of $4,197.75, and costs in the amount of $138.29 against Defendant Gordashevsky.  Further, the Court will award Chanel judgement in the amount of $3,792.50 in attorney's fees; investigative fees in the amount of $2,164.95; and costs in the amount of $376.56 against Defendants Ouri Galili, Sara Galili, and Cell Seek Corporation.  The Court will also enjoin Defendants from committing any further violations of Chanel's trademark rights.  The accompanying order shall issue today.


Dated:  1/29/2007                                    s/Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge