**NOT FOR PUBLICATION**                                      (Docket Entry No. 30)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____      :
CHANEL, INC.,                                :
                                             :
                        Plaintiff,           :        Civil No. 05-5270 (RBK)
                                             :
            v.                               :        **OPINION**
                                             :
ALINA GORDASHEVSKY, et al.,                  :
                                             :
                        Defendants.          :
_____      :

KUGLER, United States District Judge:

THIS MATTER comes before the Court on the motion of Plaintiff Chanel, Inc. ("Plaintiff" or "Chanel") for entry of default judgment pursuant to Federal Rule of Civil Procedure 55 against Defendant Evan Coheann, a/k/a/ Ethan Cohen ("Defendant Coheann"). Plaintiff requests (1) injunctive relief against future infringement of intellectual property rights; (2) statutory damages for trademark counterfeiting; (3) attorney's fees; and (4) costs of suit. Because Defendant Coheann has failed to defend in this matter, and the Court is satisfied that the complaint establishes a legitimate cause of action, the Court grants Plaintiff's motion.

## I.      BACKGROUND

Chanel is engaged in the business of manufacturing and distributing throughout the world various goods including handbags, wallets, travel bags, luggage, change purses, sunglasses, scarves, necklaces, and numerous other products under the federally registered

trademarks "Chanel" and "CC Monogram" (collectively "Chanel Marks"). Chanel expends substantial time, money, and other resources developing, advertising, and otherwise promoting the Chanel Marks in the United States in association with the sale of handbags, wallets, jewelry, sunglasses and other goods. Chanel contends that as a result of these efforts, consumers readily identify merchandise bearing Chanel Marks as being high quality merchandise sponsored and approved by Plaintiff.

Chanel registered various forms of its trademarks in the United States Patent and Trademark Office. At present, Chanel's U.S. trademark registrations include CC MONOGRAM (Reg. No. 1,734,822), CC MONOGRAM (Reg. No. 1,314,511), CC MONOGRAM (Reg. No. 2,880,780), CHANEL (Reg. No. 0,626,035), CHANEL (Reg. No. 1,347,677), CHANEL (Reg. No. 1,733,051), CC CHANEL (Reg. No. 1,329,750), CHANEL (Reg. No. 1,214,265), CHANEL (Reg. No. 0,906,262), CC MONOGRAM (Reg. No. 1,654,252), CHANEL (Reg. No. 1,510,757), CHANEL (Reg. No. 0,612,169), CHANEL (Reg. No. 0,902,190), and CC MONOGRAM (Reg. No. 1,501,898). (Compl. at 7.) Chanel's trademarks were never assigned or licensed to any of the defendants in this matter.

Chanel filed a complaint against various defendants, including Defendant Coheann, on November 4, 2005. (Docket Entry No. 1.) According to Chanel, the defendants directly and personally engaged in the sale of products bearing counterfeit versions of its registered trademarks with knowledge of Chanel's ownership of these marks, including the exclusive right to use and license the trademarks and the goodwill associated with the Chanel name.

Chanel alleges that the defendants manufactured, promoted, and otherwise advertised, distributed, sold, and/or offered for sale counterfeit products, including handbags, wallets,

sunglasses, jewelry, and scarves bearing trademarks that were exact copies of the Chanel marks (the "counterfeit goods").  Chanel specifically alleges that the defendants used the Chanel marks in the same stylized fashion for a different quality of goods.

Chanel claims that the counterfeit goods are of a quality substantially different from Plaintiff's genuine goods and that the defendants were actively distributing and advertising substantial quantities of the counterfeit goods with knowledge that purchasers will mistake such goods for the high quality products offered for sale by Chanel.  Chanel contends that Defendants engaged in these counterfeiting activities knowingly and intentionally or with reckless disregard or willful blindness to Chanel's rights for the purpose of trading on the goodwill and reputation associated with the Chanel name and caused Chanel injury.

Default judgment has previously been granted against all defendants except Defendant Coheann.  Chanel v. Gordachevsky, Civ. No. 05-5270, 2007 WL 316433 (Jan. 29, 2007).  Chanel asserts that Defendant Coheann is the owner and operator of various web addresses through which he sells counterfeit Chanel products.  These websites include EDesignerHandbags.net, WorldBagsExpress.com, AccessoriesPlus1.com, Spicybags.com, Bolsos-Accessorios.com, RodeoDriveReplicas.com, Replicamoda.com, StyeDiva.net, X-Bags.net, Fashionzone.info, and OnlineFashionTrends.com.  Defendant Coheann was served with the Summons and Complaint on November 17, 2005.  (Docket Entry No. 5.)  Chanel filed an Amended Complaint, and Defendant Coheann answered this Amended Complaint on January 11, 2006.  (Docket Entry No. 2, 6.)

On July 31, 2006, Chanel moved to strike Defendant Coheann's answer and enter default against him.  This motion was based on Defendant Coheann's failure to appear for his scheduled

deposition; he informed his counsel several days before the deposition was to take place that he had left the United States for Israel and did not intend to return for his deposition.  Magistrate Judge Ann Marie Donio denied the motion on October 11, 2006.  (Docket Entry No. 21.)  Judge Donio noted that striking an answer and entering default would be an extreme sanction, and rather than do so, she imposed on Defendant Coheann the costs to Chanel based on his failure to appear at his deposition and gave him another chance to comply with discovery and be deposed. (Order of Oct. 11, 2006 at 7, 10.)

Chanel moved again for entry of default against Defendant Coheann on November 14, 2006.  (Docket Entry No. 22.)  Defendant Coheann's counsel, Thomas Doerr, also moved to withdraw from the representation.  (Docket Entry No. 23.)  According to Mr. Doerr's certification, Defendant Coheann advised Mr. Doerr that he was living in Israel, had no intention of returning to the United States, and had no intention of contesting the allegations of the Complaint in this case or defending this case in any way.  On April 24, 2007, Judge Donio issued an order permitting Defendant's counsel to withdraw, entering default against Defendant, and striking Defendant's answer and any defenses.  (Docket Entry No. 28.)  Chanel moved for entry of default judgment on September 26, 2007.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  The entry of a default judgment is largely a

matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at 1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, et al., 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at 1 (citing Wright, et al., § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004)).

## III.   DISCUSSION

### A.   Trademark Infringement, Counterfeiting, and False Designation of Origin

Federal trademark infringement, 15 U.S.C. § 1114(1)(a)[1], and a false designation of origin

---

[1]     Section 1114 provides, in relevant part:
Any person who shall, without the consent of the registrant (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies

claim, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards pursuant to the Lanham Act. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). To establish either Lanham Act claim, the record must demonstrate that plaintiff (1) has a valid and legally protectable mark; (2) owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. Id. The first two requirements are satisfied when a federally registered mark has become incontestable, meaning the owner has filed affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there has been no adverse decision concerning the registrant's ownership or right to registration. Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466 (3d Cir. 1994).

To establish federal trademark counterfeiting, the record must establish that (1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit[2] or was willfully blind to such use. Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc., No. CV. 96-6961, 1998 WL 767440, 7 (E.D. Pa. Nov. 3, 1998). The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain

---

hereinafter provided.
15 U.S.C. § 1114(1)(a),(b).

[2]      According to the Lanham Act, the term "counterfeit mark" refers to "a mark that is registered on the Principal Register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). More generally, counterfeiting has been defined as "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." Playboy, 1998 WL 767440, at 7.

treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit.  Id. at 2; see also 15 U.S.C. § 1117.

      **B.**      **Cause of Action**

      Before awarding a default judgement, the Court must determine whether the moving party's complaint establishes a legitimate cause of action.  Croce, 332 F. Supp. 2d at 717.  The Court has previously decided in granting default judgment against the other defendants that Chanel's Complaint does state a cause of action for trademark infringement.  Chanel, 2007 WL 316433, * 4.  Chanel's Complaint states the same allegations against Defendant Coheann, specifically with reference to the websites EDesignerHandbags.net, WorldBagsExpress.com, Handbags Plus, and AccessoriesPlus1.com.  Chanel has alleged that it had valid and legally protectable marks, that it owned such marks, that Defendant Coheann distributed goods bearing counterfeits of the marks, and that consumers would mistake such Defendant Coheann's low-quality goods for the genuine high quality products offered for sale by Chanel.

      Because Defendant Coheann has defaulted, the Court accepts these allegations as true and finds that Defendants infringed and counterfeited Chanel's registered trademarks in violation of § 32 of the Lanham Act  by intentionally and unlawfully using such marks in a manner that was "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C.§ 1114.  Chanel has therefore established a cause of action on which relief can be granted.

      **C.**      **Emcasco Factors**

      Prior to entering default judgement, the Court must also consider three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a

meritorious defense, and (3) whether the defendant's delay was the result of culpable

misconduct.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

   Judge Donio has already concluded that the Emcasco factors weigh in favor of entry of

default judgment in this case.  (Order of Apr. 4, 2007 at 5-8.)  Not only has Defendant Coheann

not filed any responsive pleadings explaining why default should not be granted, in fact he has

expressed his intent to not defend against Chanel's Complaint.  (Doerr Cert. ¶¶ 4-5.)  Judge

Donio has previously stricken Defendant Coheann's Answer and concluded that in any event the

Answer did not state a meritorious defense.  Defendant Coheann's failure to defend is clearly his

own, and his counsel bears no culpability.  Chanel is entitled to default judgment against

Defendant Coheann.

   **D.   Remedies**

      i.  Damages

A plaintiff who succeeds in showing a violation of its registered marks may recover

actual damages measured by the defendant's profits.  15 U.S.C. § 1117(a).  Alternatively, §

1117(c) provides that on election of the plaintiff or where actual damages cannot be calculated,

an award of statutory damages can be awarded.  a plaintiff may recover statutory damages in an

amount set by the Court.  Louis Vuitton Malletier & Oakley Inc. v. Veit, 211 F. Supp. 2d 567,

583 (E.D. Pa. 2002) ("In the absence of clear guidelines for setting a statutory damage award,

courts tend to use their wide discretion to compensate plaintiffs, as well as to deter and punish

defendants . . . .").  The statute provides for not less than $500.00 nor more than $100,000.00 per

counterfeit mark per type of goods or services.  15 U.S.C. § 1117(c). If the defendant's

infringement was willful, then the maximum that can be awarded for statutory damages increases

to $1 million per mark per type of goods.  15 U.S.C. § 1117(c)(2).  In order to award the maximum $1 million award, the defendant's willful conduct must have included an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark...in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured."  Louis Vuitton, 211 F. Supp. 2d at 583 (quoting Securacomm Consulting Inc. v. Securacom Inc., 166 F.3d 182, 187 (3d Cir. 1999)).

The Court concludes that Defendant Coheann's conduct was willful.  By defaulting, Defendant Coheann admits Chanel's allegations that he acted willfully and had knowledge of Chanel's ownership of the marks at issue, including its exclusive rights to use and license the marks and the goodwill associated with the marks.  The fact that Defendant sold goods using marks that were identical to such strong and established marks conclusively demonstrates his desire and purpose to trade upon Chanel's goodwill.  Microsoft Corp. v. CMOS Tech., 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which defendants, acting in direct competition with the plaintiff, sold counterfeit products on which the plaintiff's registered marks appear in their entirety.").  The "disclaimer" on the websites indicating that the goods are replicas and not intended to be represented as originals does not alter this analysis.  (Pl.'s Ex. Z.)  Rather, it indicates Defendant Coheann's knowledge of Chanel's trademarks and his intent to capitalize on the value of the marks.  Rolex Watch USA, Inc. v. Jones, Civ. No. 99-2359, 2000 WL 1529263, *3 n.1 (S.D.N.Y. 2000).  Defendant Coheann's infringing conduct was clearly willful.

Having concluded that Defendant Coheann's conduct was willful, the Court must determine the appropriate damages.  Chanel cannot prove actual damages; this is largely because

9

Defendant Coheann did not respond in this case or provide evidence from which the extent and profitability of his counterfeiting operation could be determined. Chanel provides various estimates of Defendant Coheann's profits from each of his websites and asserts that its estimates are reasonable and conservative. Chanel's estimate of Defendant's profits totals $2,238,624.50. (Pl.'s Br. at 29.)

Chanel's estimates are based on each of Defendant's nine websites, and Chanel calculates Defendant's profits by assuming that the inventory for each separate website turned over each week. Chanel then calculates profits based on adding these separate amounts. (Pl.'s Br. at 15-29.) However, the evidence provided by Chanel's own investigator shows that the websites were linked to a common warehouse and shipping address and most likely had a common inventory. (Holmes Decl.¶ 15, 54-57.) Though a plaintiff's factual allegations are generally accepted as true in the context of a motion for default judgment, the Court should not accept a plaintiff's allegations as to the amount of damages without further evidence. Comdyne I, 908 F.2d at 1149. The Court declines to adopt Chanel's estimates of actual damages.

Though the Court does not adopt Chanel's figure as the amount of actual damages, the figure is just for an award of statutory damages. The Court will award Chanel $2,238,624.50 in statutory damages. This amount is appropriate to compensate Chanel and deter Defendant Coheann from engaging in infringing conduct in the future.

ii. Attorney's Fees and Costs

Reasonable attorney's fees may be awarded in exceptional cases; exceptional cases include those where the Court has made a finding of willfulness. 15 U.S.C. § 1117(a); Securacomm Consulting, Inc., 224 F.3d at 280; Louis Vitton, 211 F. Supp. 2d at 567. As

10

explained above, Defendant Coheann's conduct constituted willful infringement, and Chanel is entitled to attorney's fees.

Chanel submitted that its counsel spent approximately 47.3 hours of time on this case, as set forth in the affidavits of attorneys Stephen Gaffigan and Gabriel Halpern. (Gaffigan Aff. ¶ 3, Halpern Aff. ¶¶ 10-12.) Chanel's counsel charged the rates of $275.00 and $350.00 per hour for their services, totaling $15,257.50. These figures are reasonable and fair. Chanel is therefore entitled to recover $ 15,257.50 in attorney's fees pursuant to 15 U.S.C. § 1117(b) for prosecuting this action.

Investigative charges are also recoverable under the Lanham Act. Louis Vuitton S.A. v. Downtown Luggage Ctr., 706 F. Supp. 839, 842 (S.D. Fla 1988); see also the Joint Statement on Trademark Counterfeiting Legislation, expressly providing that "to the extent that an investigator acts under the direction of an attorney, however, his or her fees may be recovered by a prevailing plaintiff as part of an award of attorney's fees." 130 Cong. Rec. H12083 (1984). Here, Chanel incurred investigation charges in the amount of $6,175.03; these costs were necessary to uncover the information regarding Defendant's counterfeiting activities. Chanel is entitled to recover these investigative costs. Chanel may also recover the $325 in costs it incurred in this action, including the $250 filing fee and the $75 to serve Defendant Coheann. (Halpern Aff. ¶ 15-17.)

iii. Injunctive Relief

Chanel also seeks equitable relief, including a permanent injunction preventing Defendant Coheann from engaging in any infringing conduct in the future and the cancellation of the website registrations used to sell the infringing products or the transfer of these domain names to Chanel.

The Court has the authority to grant injunctive and other equitable relief to prevent further violations of a plaintiff's trademark rights. 15 U.S.C. § 1116.  Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the Plaintiff succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief.  TKR Cable Co. v. Cable City Corp., No. 96-CV-2877, 1998 WL 34028782, at *5 (D.N.J. Jan. 27, 1998) (citing Roe v. Operation Rescue, 919 F.2d 857, 868 n.8 (3d Cir. 1990)). The first factor contains three sub-parts which require the plaintiff to show (1) plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist. Id. at 5.

Consideration of the equitable principles in this instance weighs in favor of granting Chanel the requested injunctive relief.  The difficulty in detecting and measuring the extent of Defendant's violations and potential future violations suggests that an injunction is necessary to ensure an effective remedy in this case.  Defendant Coheann raised no equitable defenses and there is no indication that any such defenses exist. Accordingly, this Court's exercise of equity jurisdiction is proper and the first factor weighs in favor of granting the final injunction.

Second, as noted above, the unchallenged facts of this case demonstrate that Defendant violated the Lanham Act by manufacturing, distributing, importing, advertising, selling or offering for sale various goods bearing counterfeits of the Chanel Marks.  Chanel established a valid cause of action against Defendants sufficient to warrant entry of a default judgment. Therefore, Chanel succeeded on the merits.

Finally, the balance of equities weighs in favor of granting injunctive relief. Defendant's alleged misconduct clearly violates the Lanham Act.  The only conceivable purpose behind

Defendants' counterfeiting activities was to profit from the well-established reputation of Chanel's products. Therefore, because the Defendants' illegal conduct does not serve a legitimate purpose and harms both Chanel and the public interest, the balance of equities weighs strongly in favor of granting injunctive relief.

Because § 1116 and the relevant equitable considerations authorize an award of injunctive relief under these circumstances, the Court will grant Chanel's request to enjoin Defendant from committing or assisting in the commission of any violation of the Lanham Act. The Court will also order the cancellation of the domain names used to facilitate sales of the infringing products or the transfer of the domain names to Chanel.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will enter default judgment against Defendants.  The Court will award Chanel $2,238,624.50 in statutory damages, attorney's fees in the amount of $15,257.50,  investigative fees in the amount of $6,175.03, and costs in the amount of $325.00 against Defendant Coheann.  The Court will also enjoin Defendant from committing any further violations of Chanel's trademark rights.  The accompanying order shall issue today.


Dated:_____4-7-08_____                        _____/s/ Robert B. Kugler_____
                                              ROBERT B. KUGLER
                                              United States District Judge

13